**Katie RELF, Individually and on behalf of persons similarly situated, et al., Plaintiffs,**

**v.**

**F. David MATHEWS et al., Defendants.**

**NATIONAL WELFARE RIGHTS ORGANIZATION, Plaintiff,**

**v.**

**F. David MATHEWS et al., Defendants.**

**Civ. A. Nos. 1557–73, 74–243.**

United States District Court, District of Columbia.

Oct. 22, 1975.

Joseph J. Levin, Jr., Morris S. Dees, Jr., Montgomery, Ala., Frederick D. Palmer, Washington, D. C., for plaintiffs in 1557–73.

Thomas G. Corcoran, Jr. Asst. U. S. Atty., Washington, D. C., for defendants in both cases.

Leonard H. Becker, Lois J. Schiffer, Charles R. Halpern, Washington, D. C., for plaintiff in 74–243.

## MEMORANDUM ON REMAND

GESELL, District Judge.

These proceedings were initiated by the complaint filed in Civil Action No. 1557–73 on July 31, 1973. After extensive discovery and pretrial motions these consolidated matters were heard on plaintiffs' motions for summary judgment and a cross-motion by defendants to dismiss both actions. The Court filed a Memorandum Opinion and Order on March 15, 1974 (372 F.Supp. 1196 (D. D.C.1974)), granting judgment for plaintiffs. A stay was denied first by this Court and then by the United States Court of Appeals for the District of Columbia Circuit. Defendants appealed. Plaintiffs moved in the Court of Appeals for summary affirmance and defendants moved for summary affirmance "with modifications." On April 18, 1975, the Court of Appeals, *per curiam*, retained jurisdiction but remanded with the following limited specific direction:

FURTHER ORDERED by the Court that the record is remanded to the District Court for consideration of the proposed modifications.

The modifications would entail a reversal of part of Judge Gesell's order. Before such a course can be considered, we feel it is necessary to have a statement of the District Court's reasons for accepting or rejecting the proposed regulations.

Extensive proceedings have since been under way. Plaintiffs oppose the modifications as contrary to law, impractical and unmanageable, pointing, among other things, to serious deficiencies which have occurred in defendants' enforcement of the existing order which has been in effect now more than eighteen months. The issue on remand is now before the Court after considering numerous briefs, affidavits and several volumes of documents developed mainly through discovery since remand.

The Court originally held, *inter alia*, that the Secretary's regulations were invalid insofar as they authorized sterilization of persons who were legally incompetent under state law by reason of age or mental condition. In adopting the varying state standards the Court sought to implement the clear congressional intent that sterilization, an irreversible process, would be federally funded only for persons having the necessary capacity to decide voluntarily and free of coercion. Pending appeal the defendants have gone further than required by the decree and across-the-board have barred all sterilizations of persons under age 21 and sterilization of any person mentally incompetent under state law.

The modifications, first proposed in the Court of Appeals, are designed to substitute a universal federal standard of voluntariness which, under various

conditions and procedures to be outlined, will permit sterilization of persons 18 years of age and older even where such persons are otherwise incompetent in fact because of age or mental condition under state standards. The modifications appear to contemplate the following:

The proposed regulations apply to nontherapeutic sterilizations, whereas, with limited exception, the Court contemplated that all sterilizations, except emergency cases, would have to meet the test of voluntariness and informed, noncoerced consent.

The proposed regulations would permit nontherapeutic sterilizations of persons adjudicated incompetent where (i) an interviewer certifies that the patient appears to understand an explanation of the procedure, voluntarily requests the service, and has given his or her informed consent; (ii) a physician certifies that the patient has voluntarily accepted the physician's service; and (iii) a committee (a) determines that the patient has voluntarily requested the sterilization and given his or her informed consent, and (b) certifies that the patient appears to understand specified information about the sterilization. If under state law, the approval of a parent or guardian is required to perform a medical procedure on the adjudicated incompetent, such consent appears to be necessary before a nontherapeutic sterilization may be performed with federal funds.

In addition, if the adjudicated incompetent is institutionalized, a state court of competent jurisdiction must approve the sterilization "to assure that the requirements" of the proposed regulations and of any other applicable state and federal laws are met. A person adjudicated incompetent by a state court who is not institutionalized may be sterilized without any subsequent adjudication by that court that he or she has the capacity to consent to the operation and generally no court approval is required.

 It is not disputed that the intrusion on the individual caused by the federal program is one that must be closely supervised, and adequate protections must be afforded to comport with the specific statutory intent and to prevent constitutional difficulties. Family planning through sterilization is a growing and now far-reaching phenomenon. It is an effective, permanent and relatively simply way to prevent childbirth. Its widespread use has profound social, economic and, to many, religious significance. The congressional directive that sterilizations financed by the Federal Government must be voluntary is a requirement that should not be lightly treated. Where minors or mental incompetents are involved, adequate safeguards must be developed to prevent abuses that this record shows frequently occur through overzealous physicians, hospital employees and social workers, or because of ignorance of the regulatory scheme.

 An act is voluntary if it is intentional and not induced by coercion. An agreement to be sterilized is a contract. To enter into such a contract an individual must have the legal and mental capacity to decide what is truly in his or her own interest. Throughout modern history civilized government has provided special safeguards for those whose age or mental condition suggests inability to make decisions objectively in their own best interests. These safeguards are especially appropriate where the Federal Government is financing an intrusion on a citizen's body which has a permanent effect on the reproductive process. Part of the present difficulty results from the fact that HEW is not sufficiently funded to enable it systematically to monitor individual decisions to sterilize. Thus HEW must depend in substantial degree on a complex series of procedures to be undertaken by persons not realistically subject to supervision and control or otherwise responsive to Congress. The experience with other phases of the sterilization problem shows the extreme difficulty that

HEW is having in monitoring even the simplest safeguards.

██ When this case was before the Court prior to its Order, defendants never proposed a federal standard governing voluntariness. Indeed, it is doubtful the Court had power to establish one except by consent. Under the rigid strictures of the mandate the Court of Appeals retains jurisdiction, the appeal is still pending, and this Court has no authority to do more than approve or disapprove the precise modifications proposed and cannot fashion alternative solutions.

██ The Court has determined that the proposed modifications, as presented, will not be effective, that their coverage is uneven, that they create future uncertainties and that they fail to satisfy statutory standards. Among other things, the Court notes the following:

1. A regulation establishing a federal standard for voluntary sterilization should be considered through the rule-making process, after publication in the *Federal Register*, so that it will ultimately be fashioned with due regard for the views of the states and interested sectors of the community. The modifications proposed have not been subject to this process.

2. The Court is unwilling to enter an order which would authorize sterilizations contrary to state law and purport to affect the rights of minors and certain adjudicated incompetents to challenge at some later date the intrusion upon their person on the ground it was conducted in a manner inconsistent with applicable state law.

3. The proposed rules do not define what is therapeutic or nontherapeutic.

4. The Court is not satisfied that the complex program envisioned is susceptible to the careful, effective monitoring by the agency that would be essential to prevent abuse.

5. The proposed procedures avoid requiring certifications from the attending physician that the patient has truly given informed consent with full understanding and no provision is made for representation by counsel.

6. The proposed regulations would still not achieve the desired uniformity because they incorporate various state statutes now governing aspects of sterilization.

In denying the proposed modifications, the Court in the exercise of its discretion has, among other things, in addition to the reasons summarized above, found strong support in the supplemental memorandum submitted by plaintiff National Welfare Rights Organization filed September 17, 1975.

Unfortunately the case is in a straightjacket caused by the Government's desire to rewrite the decree in the appellate court while, at the same time, protesting the correctness of the decision below on the merits. The present procedural difficulties can be surmounted only after the appeal has run its course. If the Court erred, it can be reversed. If it did not, then the Order can be affirmed. In the event of affirmance there is nothing to prevent defendants' publishing proposed rules for establishing a workable federal standard. After an appropriate rule-making proceeding and decision, the Court could consider modifying its Order and would have the benefit of extensive data that would be generated in the rule-making proceeding reflecting experience under the Order as drawn.

██ Incident to this proceeding, plaintiffs have moved to enforce the existing Order pursuant to Rule 70 of the Federal Rules of Civil Procedure. Many serious deficiencies in the enforcement of the Order were brought to the Court's attention insofar as they might suggest, as they did, defendants' inability to make the program envisioned by the proposed modifications viable. In the process, many significant steps have been made by defendants in good faith to effectuate improved compliance. The motion to enforce is, in short, now out of date. If plaintiffs intend to pursue the matter they should file new papers

to initiate a separate proceeding as required by the rules. The motion to enforce will be denied, without prejudice, at this stage.

## ORDER

Plaintiffs having moved for an order pursuant to Rule 70 of the Federal Rules of Civil Procedure to enforce the Order now in effect and it appearing that intervening matters have substantially altered the basis for such motion, the motion is denied without prejudice.

So ordered.

## ORDER

This matter having been remanded by the United States Court of Appeals for the District of Columbia Circuit to consider proposed modifications to the Decree and the Court having determined in its discretion, for reasons set forth in an accompanying Memorandum, that such modifications are inappropriate and not in the public interest, now therefore it is

Ordered that the modifications shall be and hereby are rejected.