Virginia VOE

v.

Joseph A. CALIFANO, Jr., Individually and as Secretary of the Department of Health, Education, and Welfare, et al.

Civ. No. N–77–195.

United States District Court, D. Connecticut.

July 14, 1977.

Ronald Gold, Legal Aid Society of Hartford County, Inc., Hartford, Conn., Judith Mears, New Haven, Conn., for plaintiff.

Edmund C. Walsh, Asst. Atty. Gen., Hartford, Conn., Nancy Nemon, Atty., Dept. of Health, Education, & Welfare, Boston, Mass., Raymond L. Sweigart, Asst. U. S. Atty., New Haven, Conn., for defendants.

## MEMORANDUM OF DECISION

NEWMAN, District Judge.

This is a suit by a 20-year-old woman to obtain public funding for the expenses of a sterilization operation. She is eligible for Medicaid funds, but federal regulations currently prohibit the states from using such funds to pay for sterilization of any person under 21. The case is an unhappy blend of compelling personal circumstances, ironic administrative regulations, and uncertain judicial standards. The result, not entirely free from doubt, is that the plaintiff is without a judicial remedy.

Neither the federal defendant nor the state defendant disputes that plaintiff has voluntarily made an informed decision to be sterilized. She has been pregnant ten times. She has two children, aged 2 and 1, and a third child died within hours of birth. She has had one miscarriage and six abortions. For various reasons, including a blood-clotting condition, oral contraceptives and other forms of birth control are unacceptable to her. Affidavits from her obstetrician and her psychiatrist set forth the medical and psychological risks from another unwanted pregnancy and also establish that she understands the nature, consequences, and risks of sterilization and is competent to give informed consent.

The age-21 barrier encountered by the plaintiff arises from litigation that successfully challenged H.E.W. regulations that regrettably had permitted the use of feder-

al funds for sterilizations in circumstances where informed consent was either in doubt or even clearly lacking. See *Relf v. Weinberger*, 372 F.Supp. 1196 (D.D.C.1974). At about the same time that the *Relf* litigation was commenced, in the wake of nationwide publicity concerning abuses of the availability of federally funded sterilizations, H.E.W. announced a moratorium on H.E.W. funding of sterilizations of persons under 21 years of age. 38 Fed.Reg. 20930 (Aug. 3, 1973). The Department intended to promulgate regulations to insure the voluntariness of sterilizations under its programs. On September 21, 1973, it issued a notice of proposed rule-making (38 Fed.Reg. 26459) and on February 6, 1974, it adopted its new regulations (39 Fed.Reg. 4730, 4733). These regulations would have allowed legally competent adults—defined as persons over age 18—to be sterilized under H.E.W. programs upon the signing of a written consent document, and would have allowed the sterilization of legally competent persons under age 18, legally incompetent minors, and mental incompetents with additional safeguards. The effective date of the regulations was stayed while Judge Gesell ruled on the issues in the *Relf* suit, and the moratorium on funding of sterilizations of all persons under 21 was continued in effect. 39 Fed.Reg. 5315, 9178, 10431.

Judge Gesell rendered his decision on March 15, 1974. He found serious objection to the provisions of the February 6, 1974, regulations concerning minors and mental incompetents. However, the objection to the provisions for those over 18 was relatively trivial: for these persons H.E.W. had required written indication of informed consent including understanding that the person could *withdraw* consent without losing federal benefits, but Judge Gesell found this provision unreasonable for lack of a requirement that the consent form indicate the person's *initial* understanding that consent to the operation could be refused without losing federal benefits.

H.E.W. then appealed Judge Gesell's decision, meanwhile continuing the moratorium in effect indefinitely while the Department "considers its options." 39 Fed.Reg. 13872,

13873 (Apr. 18, 1974). Even though the *Relf* decision had required only the slightest modification of consent procedures for those over 18, the continuation of the moratorium totally barred funding for the sterilization of any person under the age of 21. The *Relf* litigation, aimed at barring funds for sterilizations when consent was lacking, thus achieved the ironic result of precipitating a regulation that barred funds for sterilizations of all persons aged 18 to 21, even when informed consent was unquestionably established.

While the *Relf* decision was on appeal, H.E.W. further added to the irony of the present situation by seeking court permission to modify the challenged regulations to permit funding of sterilization of any person over 18 provided certain procedures were followed for assuring the existence of informed consent. See *Relf v. Mathews*, 403 F.Supp. 1235 (D.D.C.1975). The outcome of that litigation is not clear, but the "temporary" regulation remains in force, see 39 Fed.Reg. 13872 (1974), barring Medicaid funding for sterilization of any person below the age of 21, even though H.E.W. had twice in the course of that litigation taken the position that it would fund sterilizations for those 18 to 21 provided there was adequate evidence of informed consent.

This temporary federal regulation prevents the 20-year-old plaintiff in this case from receiving Medicaid funds for the sterilization to which she has validly consented. Connecticut also denies Medicaid funding for sterilizations of any person under 21, see Vol. 3, Ch. III, § 241, Conn. State Welfare Manual, but counsel for the state defendant informed the Court that this regulation was adopted only because it was required by the federal regulation. The state defendant expressed no state policy opposition to the use of Medicaid funds to pay for the sterilization this plaintiff seeks. Thus the federal regulation is the barrier to be litigated.

The case was heard on plaintiff's motion for a preliminary injunction. Plaintiff submitted medical affidavits and agreed to consolidate that hearing with the hearing

on the merits. Fed.R.Civ.P. 65(a). Defendants offered no evidence.

At the outset it is important to set forth what is not at issue in this case. The issue is not whether a person has an unqualified right to be sterilized; neither H.E.W. nor Connecticut has prohibited sterilization of legally competent 20-year-olds. Nor is the issue whether a person has a right to sterilization at public expense; neither H.E.W. nor Connecticut has barred the use of Medicaid funds for most sterilizations. The sole issue is whether a federal regulation is valid that permits the funding of sterilizations of those over 21 but prohibits such funding for those under 21. More precisely, the issue is whether such a regulation is valid as applied to a 20-year-old who is fully emancipated according to the law of her state and has given informed consent the validity of which is not challenged.

■ Asserting that there is a constitutionally protected right to elect to be sterilized, plaintiff asserts that any governmental regulation making distinctions concerning the opportunity to exercise that right denies equal protection of the laws unless it can pass the exacting standards of the compelling interest test. It may be assumed for purposes of this case that the decision whether to be sterilized is sufficiently within that group of personal decisions affecting family life and procreation to be entitled to the same degree of constitutional protection as decisions whether to prevent conception by use of birth control devices, *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), or to abort a fetus during the first trimester, *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). That protection, we have recently been advised, is not the protection of an unqualified constitutional right. *Maher v. Roe*, —— U.S. ——, 97 S.Ct. 2376, 53 L.Ed.2d 484 (1977). Even though Texas was told in *Roe v. Wade* that its statute making abortion a crime was unconstitutional as applied to a woman in the first trimester of a pregnancy, we now learn that the invalidity of that statute does not give the woman an unqualified right to an abortion; it gives her "only" the right to be free from "unduly burdensome interference with her freedom to decide whether" to have an abortion. *Ibid.* So, still on the assumption that the decision to be sterilized is entitled to the same protection as the decision to have an abortion in the first trimester, this plaintiff has a right to be free of unduly burdensome interference in her decision to seek sterilization.

■ *Maher v. Roe* further teaches that lack of public funding is not the type of governmental interference with free choice that needs to be justified by the compelling interest test. Nor is public funding of alternatives that might induce a person to forego an otherwise preferred course of conduct. Distinctions made in a statute providing public funds, at least in the context of medical benefits, pass constitutional muster provided only that they are rationally related to a constitutionally permissible purpose. —— U.S. ——, 97 S.Ct. 2376.

By that standard, the challenged regulation would appear to be clearly valid were it not for two difficulties. The first is the lack of clarity as to what purpose H.E.W. believes it is achieving when it bars funding for sterilization of emancipated adults below the age of 21. The second concerns the uncertain state of the law in the area of irrebuttable presumptions.

At argument in this case, Government counsel sought to explain H.E.W.'s position. Confronted with the uncertainties engendered by the invalidation of its original sterilization regulations in the *Relf* litigation, the Department sought to minimize problems concerning disputed informed consent until new regulations could be promulgated and upheld. Since many of the reported instances of sterilizations occurring without informed consent had involved minors, the Department elected, at least temporarily, to bar funding of sterilizations for all minors. That policy could have been achieved by forbidding each state to use Medicaid funds for the sterilization of any person who was a minor by the law of such state. However, H.E.W. was also concerned about minimizing state-by-state var-

iations in eligibility for publicly funded sterilizations. The Department therefore decided to set the minimum age of eligibility at the highest age of majority in effect anywhere in the 50 states.

■ Had the Department unequivocally determined that it believed all those under 21 lacked the intellectual and emotional maturity to make such an important and usually irreversible decision as whether to be sterilized, its purpose would have been plainly valid. The difficulty is that the regulations challenged in *Relf* would have permitted funding of sterilizations for those 18 to 21, and even during that litigation the Department went to court to seek approval of a modification of Judge Gesell's order to enable funding of sterilizations for those 18 to 21. There is no claim, and certainly no evidence, that the Department has suddenly found some basis to doubt the ability of those 18 to 21 to give informed consent. But despite the uncertain course of H.E.W. decision-making in this area, the only evident purpose of an age-21 rule is to eliminate those instances where substantial questions of informed consent might arise, and that is plainly a legitimate objective.

■ Whether that objective can be achieved by selecting the highest age of majority used by any state is less certain. The avowed basis for this choice, as reported by Government counsel, is to minimize state variation. That is a curious objective to be sought in a Medicaid program, which has as one of its basic premises the right of each state, within broad limits, to determine the scope of the program in which it chooses to participate. Indeed, even the challenged regulation will not eliminate state variation concerning funding of sterilization. Indigent women over 21 in those states that elect not to fund sterilizations at all will still have an incentive to move to states that do fund such operations. But it remains true that the challenged regulation, by rejecting age limits set at each state's age majority, at least avoids any incentive for an indigent woman aged 18 to 21 who wants a publicly funded sterilization to move from a state in which she is con-

sidered a minor to one where she would be considered an adult. However slight may be that virtue of the regulation, it cannot be declared by a court to lack a lawfully legitimate objective.

There remains the issue of whether the Department can achieve its objective by barring all those under 21 from federally funded sterilizations rather than authorizing individualized determinations in each case to make sure that informed consent has been given. In other words, can there be an absolute age-21 rule, or is such a regulation invalid as an irrebuttable presumption that all those under 21 cannot give informed consent? In some contexts the Supreme Court has invalidated classifications on the ground that they regulate on the basis of facts that may not apply to all those within the regulated class. See, *e. g.*, *Cleveland Board of Education v. LaFleur*, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974); *Vlandis v. Kline*, 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973); *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). When such a regulation is to be invalidated as an irrebuttable presumption is not governed by readily identifiable standards. Indeed, as the dissenters in these cases have argued, almost every regulation can be assailed on the ground that it covers some instances not appropriate for the purpose to be achieved.

■ It would not serve a useful purpose to attempt in this case to divine the standards appropriate for determining when regulatory classifications must yield to individualized fact-finding. Plainly the Government would be entitled to select some very youthful age as the point below which no publicly funded sterilizations would be permitted regardless of how compelling the claim of some precocious child might be that an individualized hearing would show that she could give informed consent. When it is considered that the "right" asserted is not to be sterilized, but only to receive public funds for such an operation, and when the classification involved in this regulation does not involve a permanent ineligibility for funding but at

most a delay until an age only three years beyond legal adulthood is reached, it cannot be concluded that the due process clause prohibits the establishment of age 21 as a minimum age of eligibility.

Having concluded that the challenged regulation is not unlawful, the Court is obliged to enter judgment for the defendants. However, other agencies of government are not as circumscribed in the range of their decision-making. The facts of this case showing the need of this plaintiff to secure the relatively few dollars for a sterilization operation are a poignant cry that one may hope could not fail to be heard by those with discretion to accord relief. Accordingly, the Clerk of this Court is directed to send copies of this decision to both the Secretary of Health, Education, and Welfare and the Connecticut Commissioner of Welfare. The Secretary can give serious consideration to advising Connecticut that, especially in view of its prior positions with respect to sterilizations of those 18 to 21, the Department will exercise its discretion to permit Connecticut to use Medicaid funds in this one instance. If such permission is not forthcoming, the State Commissioner can then consider whether to exercise his discretion to use state welfare funds, without any federal reimbursement in this one instance. If both possibilities fail, it is reasonable to hope that somewhere in this state there is a doctor and a hospital and, if necessary, some private benefactor, willing to arrange for the medical procedure this plaintiff earnestly seeks.